UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| DAVID J. WIDI, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:11-cv-00113-JAW |
| | ) | |
| JUSTICE, U.S. DEPARTMENT OF, et al., | ) | |
| | ) | |
| Defendants | ) | |

**ORDER FOR SERVICE**
AND
**RECOMMENDED DECISION AFTER SCREENING REGARDING CERTAIN DEFENDANTS**

Through a series of events that do not need to be repeated in this recommended decision, Widi's Amended Complaint (Doc. No. 19) has become the operative pleading in this federal prisoner's civil rights action. The amended complaint now consists of five different groups of defendants: (A) two attorneys from the United States Attorney's Office; (B) four members of the Strafford County Sheriff's Department in New Hampshire; (C) eight individuals affiliated with the Maine State Prison; (D) one CJA appointed counsel; and (E) three members of the United States Marshal Service in Portland, Maine. Widi alleges that this group of individuals violated his constitutional rights in a number of disparate ways, but the factual matrix of his allegations against each individual relates to court ordered x-rays for tuberculosis testing that were taken following this court's order that Widi, as a sentenced federal prisoner, was required to submit to such a test prior to placement in a federal penitentiary. See United States v. Widi, No. 2:09-cr-00009-GZS. Widi's suit implicates both state-actor liability under 42 U.S.C. § 1983 and the liability imposed on federal officers pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

## SCREENING PURSUANT TO 28 U.S.C. § 1915A

Pursuant to 28 U.S.C. § 1915A it is my obligation to screen this civil rights complaint prior to service. Sections 1915A(a) and (b) of title 28 provide:

> (a) Screening. The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> (b) Grounds for dismissal. On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint--
>
> > (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(a), (b).

## DISCUSSION

I examine each group of defendants separately. I note as a preliminary matter that Widi's complaint is now purely a complaint for punitive, compensatory, and/or nominal general monetary damages. (Am. Compl. at 11.) He is not seeking injunctive relief or the return of seized property by the means of this civil lawsuit.

### A. The United States Attorney's Office Personnel

Thomas Delahanty, the United States Attorney, and Darcie N. McElwee, an Assistant United States Attorney, are the two named defendants from the United States Attorney's Office. Widi references the pleadings filed by McElwee in his criminal case (Id. at 3-9), and lumps Delahanty, as her supervisor, with the majority of his allegations against McElwee. An examination of the criminal docket reveals that McElwee filed a motion to compel Widi to submit to TB testing on November 18, 2010. According to the certificate of service, copies of the motion were electronically sent to Widi's trial counsel and his appellate counsel, but not to Widi himself. See Widi v. United States, No. 2:09-cr-00009-GZS (Doc. No. 271, as modified at

Doc. No. 272). The following day, the court denied the motion, based upon the fact that Widi was not within the court's territorial jurisdiction. (Id., Doc. No. 273.)

On November 24, 2010, McElwee filed a second motion to compel testing, alleging that Widi had been transferred to the Maine State Prison for the purpose of the testing and was now within this court's territorial jurisdiction. (Id., Doc. No. 275.) Once more Delahanty's name, but not his electronic signature, appears on the motion. McElwee signed the motion and the certificate of service, again indicating that both attorneys, but not Widi, had been served a copy. On the same date the court (Singal, J.) granted the motion without any further hearing or notice to either party. (Id., Doc. No. 276.) On December 1, 2010, Widi filed a pro se ex parte motion requesting injunctive relief in an apparent effort to remediate the results of the TB testing which had already been completed by that date. (Id., Doc. No. 278.) The court entered an order on that motion (Id., Doc. No. 280) requiring the Government to respond, and further litigation ensued on the criminal docket. Then on December 20, 2010, the district court judge entered an order declaring the issue of dissemination of test results was moot and granting no relief to Widi. Ultimately, the court terminated all of Widi's objections to its various orders and refused to vacate prior orders or return any property to Widi. (Id., Doc. No. 294.) That order is the subject of an appeal now pending in the First Circuit Court of Appeals.

Widi claims that Delahanty and McElwee deprived him of due process of law, the right to counsel, and freedom of religion, and also that they retaliated against him for the exercise of his religious freedom. (Am. Compl. at 5.) He also alleges that McElwee and Delahanty violated his constitutional right to be free from cruel and unusual punishment and that they subjected him to an illegal search and seizure. In addition to the allegations concerning the pleadings filed in the criminal case, Widi alleges that a state correctional officer told him that Delahanty and McElwee

did not want him to use the phone to contact the Court or an attorney. (Id. at 6.) Widi also alleges that two deputy marshals told him that McElwee and Delahanty had told them that the court order for TB testing authorized them to use force in order to obtain the test. (Id. at 8.) According to Widi's allegations, Deputy Marshal Mike LNU told everyone at the State Prison that McElwee had been making jokes about Widi being Amish. (Id. at 10.)

Widi alleges civil rights violations by federal prosecutors who enjoy the same absolute immunity from civil lawsuits as do state prosecutors. Krohn v. United States, 742 F.2d 24, 29-30 (1st Cir. 1984). In Imbler v. Pachtman, 424 U.S. 409 (1976), a case addressing the immunity of state prosecutors, the United States Supreme Court held that the common-law immunity of a prosecutor is "based upon the same considerations that underlie the common-law immunities of judges and grand jurors acting within the scope of their duties," including concern that "harassment by unfounded litigation" would distract the prosecutor from his public duties and "shade his decisions." Id. at 422-23. In this case the issue of absolute prosecutorial immunity looms large, because the bulk of the allegations clearly pertain to Delahanty and McElwee's actions that are intimately associated with the judicial phase of the criminal process. Filing motions and advocating for the judge to issue a particular order are the very sort of functions that are entitled to absolute prosecutorial immunity. The prosecutors cannot be sued because the judge acted on their motion without giving Widi an opportunity to be heard or time to file a written response. That decision was the judge's choice and did not rest with the prosecutors.

In this case, however, Widi also alleges that both prosecutors gave legal advice to law enforcement regarding use of the telephone by a prisoner and use of force to obtain the testing. Not all prosecutorial conduct warrants absolute immunity. Giving legal advice to the deputy

4

marshals does not come within the ambit of the judicial function and does not give rise to absolute immunity. Burns v. Reed, 500 U.S. 478, 496 (1991).

Absolute immunity only applies to prosecutorial actions that are "intimately associated with the judicial phase of the criminal process." Van de Kamp v. Goldstein, 555 U.S. 335, ___,129 S. Ct. 855, 860 (2009) (quoting Imbler, 424 U.S. at 430). Nevertheless, federal prosecutors are entitled to qualified immunity in a suit such as this one where money damages are sought as the sole remedy. Qualified immunity shields a federal prosecutor from money damages unless the official violated a statutory or constitutional right and that right was clearly established at the time of the challenged conduct. Ashcroft v. al-Kidd, ___U.S. ___ , 131 S. Ct. 2074, 2080 (2011) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

The factual predicate of this case turns established federal precedent on its head. There is no clearly established constitutional right that allows a sentenced prisoner to refuse a noninvasive medical procedure such as an x-ray to determine whether he is suffering from a contagious disease that could pose a substantial risk of harm to other prisoners or correctional personnel. In this case a court ordered that Widi submit to such a procedure over his objection. Most cases alleging deprivation of medical care pertain to the authorities' failure to take medically necessary steps to protect a prisoner from harm. Here, the prosecutors' advice that Widi could not speak with an attorney or the court by telephone before submitting to the procedure and that the officers could use reasonable force to obtain the x-ray, does not violate any clearly established federal precedent that I am aware of or have been able to locate through my independent research. McElwee and Delahanty are entitled to qualified immunity for the legal advice they gave to the deputy marshals.

Finally, McElwee's alleged "jokes" about Widi being Amish, even if true, do not rise to the level of a constitutional violation. The remarks do not support a reasonable inference that McElwee undertook either her judicial or nonjudicial function, *i.e.*, filing motions with the court or giving legal advice to the deputies, because of a desire to retaliate against Widi for his exercise of First Amendment rights. The allegations only support a reasonable inference that the TB test was a necessary procedure prior to admission in a federal facility and that McElwee joked about the reason for Widi's refusal to submit to the x-ray. Such conduct is far from a constitutional violation that would subject McElwee to a federal lawsuit for monetary damages.

Based upon my review of this complaint pursuant to 28 U.S.C. § 1915A both Delahanty and McElwee are entitled to have the claims against them dismissed prior to service.

**B.      Strafford County Sheriff's Department Personnel**

Although he was a federal prisoner in the custody of the United States Attorney, the United States Marshal housed Widi, pretrial, at a county jail in New Hampshire. Widi has sued the sheriff, Wayne Estes, and two deputies, Bruce Bonenfant and John Doe, the two transporting officers. According to Widi, a representative of the Marshal's Service contacted Estes and asked him to bring Widi to Maine State Prison in order for this court to obtain geographical jurisdiction over Widi's person. (Am. Compl. at 3.) Estes directed Bonenfant and John Doe to tell Widi that they were transporting him to a court hearing in Portland, but actually Estes instructed the deputies to take him directly to the Maine State Prison. (Id. at 3-4.) Once he was at the prison, Widi asked Bonenfant if he could use the phone. Bonenfant called Estes to see if he could and Estes told him that Kathy Nadeau of the Marshal's Service and the United States attorneys did not want him to use the phone. (Id. at 6.) Estes is sued individually for a variety of constitutional violations pursuant to 42 U.S.C. § 1983.

First, guided by the supervisory liability discussion in Ashcroft v. Iqbal, __ U.S. ___, 129 S. Ct. 1937, 1947-49 (2009), Widi has not stated a claim against Sheriff Estes by asserting only that Estes followed instructions he was given on the phone and told his deputies to transport Widi to the Maine State Prison. There are absolutely no allegations that Sheriff Estes, the ultimate supervisor, had any direct personal knowledge of the events at the prison or in the van on the way back to New Hampshire. Estes did not witness or order any of the alleged use of physical force and the action as against him should be dismissed.

Bonenfant and Doe are in a slightly different position. They actually told Widi that he was being transported to the United States District Court for a hearing and then took him to the Maine State Prison for the TB testing. (Am. Compl. at 3-4.) Bonenfant indicated that he told Widi that he was going to court on the instructions of the United States Marshal's Service in Portland. (Id.) Bonenfant turned Widi over to personnel at the Maine State Prison. (Id. at 5.) When Widi wanted to use the telephone, Bonenfant told him that the Marshal's Service would have to authorize that action. (Id. 6.) Bonenfant and Doe were aware that Widi was in extreme pain after the marshals forced him to submit to the x-rays, but they are not alleged to have been directly involved in the application of force at the prison. (Id. 10.) On the way back to New Hampshire, Widi experienced a seizure in the van and the deputies pulled over to the side of the road. They did not take him to a hospital or get medical treatment for him. (Id.) Widi does not allege any physical injury or long term harm as a result of the "seizure."

In order for jail officials to be liable under 42 U.S.C. § 1983 for failure to provide medical treatment, the officials must first be aware of a risk of serious harm and then they must fail to act in a reasonable fashion to address the risk. Farmer v. Brennan, 511 U.S. 825, 847 (1994). The facts pled regarding the alleged "seizure" in the back of the van do not give rise to

7

an allegation of serious harm. Widi does not allege anything about the nature, duration, or consequences of his "seizure." A fair inference, from Widi's own allegations, is that the deputies stopped the van, investigated the situation, found nothing amiss, and returned Widi to the jail without incident. The action against the deputies should be dismissed as well.

C.     **Maine State Prison Personnel**

As for the Maine State Prison defendants—Patricia Barnhart, David George, David Cutler, Curtiss Doyle, Thomas Dolbier, Violet Hanson, Jane Doe (x-ray technician at the Maine State Prison), and Jane Doe (health service provider at the Maine State Prison)—they acted only in the context of their responsibility to heed this court's order requiring Widi to submit to the medical testing upon the United States' second motion to compel. At all times Widi remained in the custody of the United States Marshal and his amended complaint makes it clear that the personnel at the Maine State Prison waited for the arrival of the marshals at the prison before they took any action to complete the TB tests. The state prison officials explained to Widi that he was there for court-ordered medical testing and that they did not intend to commence the procedure until they received a court order to do so. (Am. Compl. at 5.) Widi complains that none of the state officials allowed him to use a phone, but as discussed above, they were acting upon the instructions of the United States Attorney's office personnel. (Id. at 6.) If the United States Attorney is entitled to qualified immunity for giving the legal advice that was given, then certainly the front line officers who were acting pursuant to those instructions, according to Widi's own allegations, are likewise entitled to qualified immunity and the State of Maine should not be called upon to respond to this action.

### D.     CJA Counsel Peter Rodway

Widi alleges that at the time of this incident Rodway "pretended to represent Mr. Widi" on the criminal case even though he had been granted leave to withdraw prior to the filing of the motion to compel. (Am. Compl. at 4.) The criminal docket reveals that Rodway moved to withdraw on October 12, 2010, well before the events giving rise to this lawsuit, was denied leave and continued on the case through sentencing and filing of a notice of appeal on October 14, 2011. After that notice was filed, new counsel handled the appeal and Rodway filed no further pleadings with the court. In fact, according to the first motion to compel filed on November 19, 2010, Rodway told the Government that if they wanted to perform a medical test on Widi they would have to file a motion with the court, presumably because he, Rodway, had no authority to negotiate, agree to testing, or resolve the matter by any means. In other words, the record evidence reveals that Widi's allegation that Rodway pretended to represent him is patently false.

The Government chose to provide the certificate of service giving Rodway notice of the motion, but by that point in time Widi had made it clear that he no longer wanted Rodway to represent him and Rodway had complied with his wishes. In any event, when the motion to compel was filed it indicated that the response date was December 9, 2010; had Rodway been instructed by Widi to respond to the motion, he would not necessarily have filed anything in opposition prior to the court acting on the motion. The court determined how it would handle the Government's motion, not Rodway. This action must be summarily dismissed as to Widi's prior court-appointed counsel, because his pleadings and the docket simply reveal that there is no claim against Rodway.

### E. Claims against the Marshal Service

I am directing the clerk to prepare the necessary documents for service against these three individuals. Widi states a claim for excessive force against Tino LNU and Mike LNU, two deputy marshals. His claim against Kathy Nadeau is harder to characterize, but essentially he alleges that she deliberately denied him access to the courts and otherwise infringed his constitutional rights. The claims against these three individuals should be allowed to proceed to service prior to any further action by this court.

### CONCLUSION

Based upon the foregoing, I am recommending that the complaint be summarily dismissed as to all of the named defendants, except for Tino LNU, Mike LNU, and Kathy Nadeau. The clerk is directed to prepare the necessary documents for service as to those three federal employees.

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

September 14, 2011